## Frank E. Sargent, et al., v. The Home Building & Loan Association of Chicago.

### Gen. No. 11,336.

1. USURY—*when homestead loan association guilty of.* Where at the time of a loan there was a by-law of the association providing for the payment of premiums in monthly installments, but none dispensing with the requirement of offering its money for sale in open meeting or providing for the loan of its money at a fixed rate of interest or premium, and the money in the particular case was not offered for sale in open meeting and the premium was arbitrarily fixed, and the same, together with interest, was in excess of the regular interest rates fixed by law, the defense of usury is established. The offering of such money in open meeting cannot be dispensed with otherwise than by law.

Foreclosure proceeding. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1903. Reversed. Opinion filed June 9, 1904.

FREDERICK MAINS, for appellants.

PIERSON & PEASE, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The following statement made by appellants' counsel is substantially correct:

"The bill in this case was filed to foreclose a certain mortgage executed by one Belinda C. Sargent and her husband, as of June 7, 1892, to said complainant association, as security for a certain bond executed by the parties, as of the same date, for the repayment of a loan in the principal

sum of $1,000 in monthly installments of $6 per month, and interest at seven per cent, payable in monthly installments of $5.83, and a premium of $330 in monthly installments of $3.43. The installments of principal, interest and premium were paid up to February, 1900. Hence there was paid on the principal $552; in interest $536.35; in premiums $314.69. Ten shares of stock of the twenty-third series were issued to Belinda C. Sargent at the time the loan was made, and were transferred by her to the association as collateral security for the loan. Because of the default in the payments the association forfeited the stock and credited its withdrawal value, $716.70, on the bond, leaving a balance due, as found by the master, including a solicitor's fee of $65, of $700.20.

The defendants, defending as heirs of Belinda C. Sargent, the mortgagor, and as grantees of the other heirs, and Frank E. Sargent as administrator, etc., set up the defense of usury, in that the premium was not fixed by competitive bidding at an open meeting of the board of directors, but was arbitrarily imposed by the association, and that the sum contracted to be paid in premium and interest exceeded the highest legal rate of interest allowed by law; that the loan was usurious, and that the various sums paid in principal, interest and premium, should be credited on the principal sum borrowed, and that the loan had been paid."

The above mentioned payments amount to $1,403.04, but the mortgagor failed to pay certain taxes and insurance, which by the mortgage she was bound to pay, to the amount of $71.08, which amount was charged against her by the master. Deducting the latter from the former amount leaves $1,331.96, paid by the mortgagor. The master, in his report, finds: "Under the proof in this case it appears that defendant has paid in dues, interest and premiums, more than the original principal, and that the amount of interest contracted for is considerably in excess of the maximum rate of interest allowed by law. The loan, therefore, must be held to be usurious, unless the application, as made, constitutes, in itself, such a bid as is contemplated by the statute under consideration." The master found that Mrs. Sargent's application was such a bid as is contemplated by the statute, and recommended a decree of foreclosure for

the balance, above stated. The court overruled all exceptions to the master's report, and rendered a decree for $722, which included $63 as a fee of appellee's solicitor.

The question to be decided is, whether the loan was made as prescribed by the statute, and in such manner as to exempt appellee from the statute in respect to usury, in force at the time the loan was made. Section 8 of the statute in regard to Homestead Associations, in force when the loan was made, provides as follows: "The board of directors shall hold such stated meetings, not less frequently than once a month, as may be provided by the by-laws, at which money in the treasury, if one hundred dollars or more, shall be offered for loan in open meeting; and the stockholders who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of one hundred dollars for each share of stock held by said stockholders. The said premium bid may be deducted from the loan in one amount, or may be paid in such proportionate amounts or installments, and at such times, during the existence of the shares of stock borrowed upon, as may be designated by the by-laws of the respective associations. Provided, that any such association may, by its by-laws, dispense with the offering of its money for bids in open meeting, and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by the priority of the applications for loans of its stockholders," etc. Hurd's Rev. Stat. 1899, p. 453, par. 85.

At the time of the loan there was a by-law of appellee providing for the payment of premiums in monthly installments, but not any by-law dispensing with the offering of its money for bids in open meeting, or providing for the loan of its money at a fixed rate of interest, or fixing any premium. That there was not and is not any such by-law of appellee is shown by the evidence and admitted by appellee's counsel in his argument. It appears from the testimony of Joseph H. Willets, who was called as a witness

by appellee, that he was a director of appellee and was present at a meeting of the association June 7, 1892, when Mrs. Sargent's application for a loan, hereinafter mentioned, was received, and that the meeting was an open one. He was questioned by appellee's counsel and answered as follows:

Q. "During the life of the association and covering June 7, 1892, what was the custom or practice of the association as to the manner of receiving.bids for loans?" A. "Applications for bids for loans were made to the secretary. He would fill the blanks as this one was filled, giving a description of the property, etc., etc., signed by the party making the bid. Then the matter was referred to the loan committee. There was usually three—always one or more of the loan committee, who would visit the property, going into verbal details, making the report favorable or unfavorable, stating the facts to the directors as to how he found the property, in his opinion, in relation thereto, as to whether desirable or undesirable—as you gentlemen can understand. Then the bid was laid before the directors, voted upon, and the bid for the loan was accepted or not accepted."

Q. "Was it the custom or practice of the board of directors to receive bids in writing, or oral bids, covering the time involved in this case?" A. "The bids were made in writing; that is, the bids were made, the parties would bid, and that was incorporated in the application to the secretary."

There were other applications for loans presented to the board of directors at the meeting of June 7, 1892, each of which applications offered a premium of thirty-three per cent of the amount of loan applied for, in respect to which the witness Willets was questioned and answered as follows:

Q. "Now, can you explain why these applications for loans stated this amount of premium to be thirty-three per cent?"

A. "Because that was the amount bid."

Q. "Was it not the practice of those interested in the affairs of the association to state to the applicants, if they said anything about premium at all, what the premium would be, and insert that in the application?"

A. "No, it was never inserted in the application, for the party making the application, making the bid, made

some inquiry as matter of opinion, what premium was being bid; and if they felt disposed *to make the same bid*, well and good, and if *they did not, that was all.*"

Witness further testified that at the time Mrs. Sargent's application, and the other applications hereinafter mentioned were made, appellee had overloaned $13,000, and had no money on hand to loan. The application of Mrs. Sargent is as follows:

" Application for an Advance.

To the Board of Directors of the Home Building and Loan Association, 124 La Salle Street:

Chicago, June 7, 1892.

Gentlemen: I hereby make application for an advance of $1,000 on 10 shares of the 23rd series stock of your Association at a premium of 33 per cent. and offer as security, in addition to said stock, the following described real estate, to wit: "

Then follows a description of the premises and statement of their value, and conditions to be complied with by the applicant.    Signed, " Belinda C. Sargent."

The minutes of the meeting of the board of directors of appellee held June 7, 1892, showed $20,353.33 due to borrowers, cash on hand $7,111.71.    The minutes contain the following:

" The following applications for loans were read, all at 33 per cent premium:    Charles Cooney, for $1,700 on house and lot at 4944 Dearborn street, valued at $2,544; Mr. Goodman, of loan committee, had examined the property and recommended the loan to Mr. Cooney, who is a fireman in good standing with fire company No. 50, and upon motion of directors Penhollow and Willets the loan was unanimously granted.    Belinda C. Sargent, for $1,000 on house and lot No. 2816 Armour avenue, worth about $3,000; Mr. Goodman, of the loan committee, reported the loan desirable, and upon motion of gentlemen Kirk and Joslin, the loan was granted by an entire vote.    The applications from F. Millington and E. W. Root for $1,200 each, to build in Clarkdale, were rejected, as the directors did not regard the loan desirable."

William S. Sargent, husband of Belinda C. Sargent, testified that he and his wife were about seventy years of age

at the time they executed the papers for the loan. The mortgage was executed by both of them. He also testified that he negotiated the loan for his wife; that she made no bid in person, and had nothing to do with the making of the loan other than signing the application; that he had no conversation with any one except Mr. Ogden, appellee's secretary, and that nothing was said to him in relation to paying a premium, or bidding for the loan, and that he did not attend any meeting of the board of directors for his wife. The witness, having been recalled for further cross-examination, testified that he transacted the business with the secretary, Mr. Ogden, and told Ogden that he wanted a loan of $1,000 to pay Mr. Howland, and Ogden said it was all right, and witness inquired what the terms would be, and Mr. Ogden said that it would be seven per cent and would come to $15.26 monthly, and would mature in seven years, and that he would have to take ten shares of stock to get the loan. Mr. Ogden also said that witness would have to bring his wife down to sign the papers, which he, Ogden, would have made out, ready to sign. Witness testified that the only time his wife was at appellee's office was when she signed the papers. The minutes of the meeting of June 7, 1892, are signed "W. B. Ogden, Secretary."

The evidence is, and the master found, that Mrs. Sargent did not attend the meeting of June 7, 1892. Mr. Ogden, appellee's secretary, must have known what occurred between him and Mr. Sargent in respect to the loan; but appellee did not call him as a witness, nor was the failure so to do accounted for in any manner. It will be observed that while Ogden, as Mr. Sargent testified, did not mention premium to him, he told him that $15.26 per month would have to be paid for the loan, which monthly payment, as shown by the condition of the bond to secure which the mortgage was executed, includes $6 per month of the principal, $330 unpaid premium, in monthly installments of $3.43 each, and interest at seven per cent per annum on $1,000 in monthly installments of $5.83 each.

The minutes of the meeting of June 7, 1892, contain the following:   " The action of the secretary was approved *in making the following stock loans, all at 33 per cent premium:*   William Baylis, one hundred dollars on one share, 12th series, sec. 10 shares 12th series; H. D. Warren, two hundred dollars, two shares, first series, sec. 20 first series; C. F. Hudson, two hundred dollars, shares third series, secured ten shares third series; D. R. Seligman, one hundred dollars on one share, first series, sec. ten shares first series; William H. Smith, one thousand dollars on ten shares, second series, sec. fifty shares second series."   Here is an express statement that the loans mentioned were made by the secretary, " all at 33 per cent premium."   As against appellee, this evidence is conclusive as to how loans were made, viz., by the secretary, for a premium and at a rate of interest fixed by the directors, no by-law authorizing the same.

By section 8 of the statute, as we have seen, the offering of appellee's money for bids in open meeting can be dispensed with only in one way, viz., by by-law, fixing the rate of interest and fixing the premium, when premium is required.   This mode of dispensing with the offering of money for bids in open meeting is, in accordance with a familiar rule of construction, exclusive of all other modes.

The evidence shows conclusively, as we think, that appellee undertook to do that which, in the absence of a by-law authorizing it, it could not legally do, viz., fix the premium and the rate of interest.   What was done in the matter of Mrs. Sargent's application must be accepted as illustrative of what was done in all similar applications. Director Willets testified as to the practice of the association in regard to applications for loans :  "Applications for loans, or bids for loans, were made to the secretary.   He would fill the blanks as this one was filled," referring by " this one " to Mrs. Sargent's application.   The statute very clearly contemplates competitive bidding, or at least opportunity for such bidding, when money is offered in open meeting; but here there was no opportunity for com-

petitive bidding. As heretofore shown, four applications
for loans were presented to appellee's board of directors
at their meeting of June 7, 1892, in each of which the pre-
mium offered was thirty-three per cent of the loan ap-
plied for. Can it be doubted that the secretary either in-
formed the applicants, other than Mrs. Sargent, what the
premium would be, or that he informed them, as he did
Mr. Sargent, that the monthly payment would be an amount
which would include a monthly installment on a thirty-
three per cent · premium, and filled in their applications,
stating the amount of premium? It appears from the
evidence that Mrs. Sargent was not present at the meet-
ing of June 2, 1892, and Willets, when asked whether any
applicant was present, said he could not say, that he did
not remember. . If the applicants had been present, director
Willets, who says he was at the meeting, would hardly
fail to recollect their presence. The evidence shows clearly
that appellee's money was not "offered for loan in open
meeting."

In Borrowers' Association v. Eklund, 190 Ill 257, the
court say : " In order to be protected from the conse-
quences which would otherwise attach to a transaction
usurious under the general laws of the state, associations
organized under this act must observe the provisions of
the statute enacted for the purpose of authorizing the course
of dealing to be pursued with their borrowing stockhold-
ers." Ib. 264. The court further say : " The plan marked
out by the statute, of requiring the association to offer its
money for sale at a regular stated meeting of its directory
for the highest rate of premium which its stockholders were
willing to bid therefor, or the other alternative plan au-
thorized by the provisions of said section 8, but not adopted
by this association, of fixing a rate of premium by a general
by-law applicable to all and uniform in its operation as to all
stockholders, are the only two plans to be followed in order
to exempt a loan, otherwise usurious, from the operation of
the general interest laws of the state."

The case of Jamieson v. Jurgens, 195 Ill. 86, is similar in

its facts to the present case. In that case the law author-
izing homestead associations to fix premium and interest by
by-law, was not in force when the loan was made, but in
the present case, no such by-law having been passed or
adopted by appellee, the law applicable is the same as ap-
plied by the court in that case. The court say : " As the
money was not put up to the highest bidder on the com-
petitive plan, and bid for by the borrower, but the pre-
mium was fixed arbitrarily by the directors of the associ-
ation, the contract was usurious," and the court held that
all moneys paid to the association by Jurgens, regardless of
whether they were designated payments upon stock, inter-
est or premium, should be applied in payment of the amount
received by him.

The loan to Mrs. Sargent was $1,000, and, as we have
shown, her total payments amount to $1,331.96, or $331.96
more than she received from appellee. The decree will be
reversed, with directions to dismiss the bill for want of
equity.

*Reversed.*